UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MARTHA T. DENEGER                                                                                    PLAINTIFF

v.                                                           CIVIL ACTION NO. 3:14-cv-00586-CRS-DW

SEPHORA USA, INC. and
GENERAL GROWTH PROPERTIES, INC.
or REIT                                                                                                DEFENDANTS

<u>Memorandum Opinion</u>

I.     <u>Introduction</u>

This matter is before the Court on the motion of Defendant Sephora USA, Inc. ("Sephora") for summary judgment under Federal Rule of Civil Procedure 56(a). Plaintiff Martha Deneger responded, and Sephora replied. For the reasons stated below, the Court will deny the motion.

II.    <u>Background</u>

On the evening of August 15, 2013, Deneger went to the Oxmoor Center Mall to purchase a gift. Deneger Dep. 29, 103, ECF No. 31-2. She decided to shop for the gift at the Sephora store inside the mall. *Id*. at 13, 29. She went into and left Sephora without incident. *Id*. at 30. After making a purchase at a nearby jewelry store, she decided to return to Sephora to buy another gift or an item for herself. *Id*. at 31.

Deneger walked towards Sephora "with purpose" and "briskly." *Id*. at 66. She was approximately four to five feet away from the stores on the side of the mall where Sephora is located. *Id*. at 64. As she approached Sephora, she noticed the black-and-white stripe pillars extending out from the storefront. *Id*. at 63. She saw what she thought to be an opening into Sephora. *Id*. at 34, 49, 59, 66–67. She turned left to go inside. *Id*. at 61. But instead she walked

1

directly into the glass panel on the far left end of the Sephora storefront ("the storefront window"). *Id*. at 34, 49, 59, 66–67. She was not distracted, nor was her view obstructed. *Id*. at 49, 54, 68. Although Deneger was looking straight ahead, she did not see the black frame surrounding or the glare from the storefront window. *Id*. at 68, 89.

She became "rather dazed" and went inside Sephora. *Id*. at 55. She tried to leave the store, but she became unsteady on her feet and grabbed onto a counter. *Id*. at 55, 56. Deneger then noticed that the outside and inside of her nose were bleeding. *Id*. at 56.

Two female employees brought Deneger ice and a rag for her nose. *Id*. at 48, 57. While assisting Deneger, one of the employees "mentioned that this happened often and that they usually had a face print every week or so." *Id*. at 48; Deneger Aff. 1, ECF No. 36-1. The employees also stated that they had asked their managers to place something in front of the pane glass to prevent people from walking into the storefront window. Deneger Dep. 58, ECF No. 31-2; Deneger Aff. 1, ECF No. 36-1. They asked Deneger if she wanted an ambulance, but she refused. Deneger Dep. 79, ECF No. 31-2.

After spending between 20 and 30 minutes at Sephora, Deneger left the mall. *Id*. at 78. One of the Sephora employees walked her to her car. *Id*. at 77, 84. Although she had refused the employees' offer to call the ambulance when she was at the store, she decided to visit the hospital before returning home. *Id*. at 78. There, she was diagnosed with musculosketetal strain in her neck and shoulder, and she had swelling in her eyes and lip. *Id*. at 46.

In July 2014, Deneger filed suit against Sephora in the Jefferson County, Kentucky Circuit Court.[1] Compl., ECF No. 1-1. She asserts that Sephora had negligently maintained the

---

[1] The case was originally filed against Sephora and General Growth Properties, Inc. (GGP) or REIT. Deneger, Sephora, and GGP voluntarily dismissed GGP as a party. Proposed Agreed Order, ECF No. 40.

common areas of the Sephora store entrance and the adjoining glass panel areas, which caused her injuries. Compl. ¶¶ 4–5. Sephora removed the action to this Court based on diversity jurisdiction. Notice of Removal, ECF No. 1. Sephora now moves for summary judgment under Federal Rule of Civil Procedure 56(a).

III.   Standard of Review

Before granting a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party satisfies this burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). When resolving a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

IV.   Discussion

Under Kentucky law, a negligence claim "requires proof of (1) a duty on the part of the defendant; (2) a breach of that duty; (3) a consequent injury, which consists of actual injury or harm; and (4) legal causation linking the defendant's breach with the plaintiff's injury." *West v. KKI, LLC*, 300 S.W.3d 184, 190 (Ky. Ct. App. 2008). Sephora argues that summary judgment should be granted because Deneger cannot show that it breached the duty of care it owed her as an invitee under the open and obvious doctrine of premise liability. Sephora's Mem. Supp. Mot. Dismiss 6, ECF No. 31-1.

In premises liability cases, land possessors generally owe invitees a duty to "discover unreasonably dangerous conditions on the land and to either correct them or warn of them." *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010). An unreasonably dangerous condition giving rise to the land possessor's duty to warn or to correct the condition is one that can be "recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized or one that is in fact recognized as such by the particular defendant." *Shelton v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 914 (Ky. 2013) (citing Dobbs, The Law of Torts § 143, p. 335 (2001)). A risk is not unreasonable and does not give rise to a duty to warn or correct the condition if an ordinary person would not attempt to reduce or eliminate it. *Id*.

In premise liability cases in which the dangerous conditions were open and obvious, the duty of care traditionally would be eliminated. *Id*. at 910. Recently, however, the Kentucky Supreme Court modified its open and obvious doctrine to include a more nuanced analysis of duty and breach when it adopted the approach outlined in Restatement (Second) of Torts § 340 (1934). *McIntosh*, 319 S.W.3d at 389. The Court clarified that under the state's tort law, a land possessor still owes invitees a duty to discover and to correct or warn of open and obvious conditions that are unreasonably dangerous. *Shelton*, 413 S.W.3d at 914.

Under Kentucky law, a dangerous condition is open and obvious when the plaintiff subjectively knows of the condition and appreciates the danger or when, objectively, "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 895 (Ky. 2013) (citing Restatement (Second) of Torts § 343A(1) cmt. b (1965)). Open and obvious conditions include a twelve-inch orange warning cone, *Wiley v. Sam's Club, Inc.*, No. 3:14-CV-54-GNS, 2015 U.S. Dist. LEXIS 76305,

4

at *1 (W.D. Ky. June 11, 2015), wires strung along the side of a hospital bed, *Shelton*, 413 S.W.3d at 906, gravel in a parking lot, *Lucas v. Gateway Cmty. Servs. Org., Inc.*, 343 S.W.3d 341, 345 (Ky. Ct. App. 2011), and an "unusual curb" next to an emergency room, *McIntosh*, 319 S.W.3d at 393.

In comparison, black ice, water on the floor next to wet floor mats, and a parking barrier spanning two parking spaces are not open and obvious conditions. *See Garrity v. Wal-Mart Stores East, Ltd. P'ship*, 288 F.R.D. 395, 405 (W.D. Ky. 2012) (finding genuine issue of material fact as to whether the black ice on which the plaintiff slipped was open and obvious); *Webb*, 413 S.W.3d at 896 ("Here, because of the appearance of the tile and the water, the condition was not easily perceptible without closer inspection beyond the exercise of reasonable care."); *Edwards v. Target Corp.*, 2012 U.S. Dist. LEXIS 51740, at *1, *4 (W.D. Ky. 2012) (explaining how a parking barrier's layout was so unusual as to not be obvious).

Here, there is a genuine issue of material fact as to whether Sephora's storefront window was an open and obvious risk. Without citing any evidence in support, Sephora asserts that the storefront window was subjectively an open and obvious risk because "Mrs. Deneger saw the glass storefront during her first visit to Sephora on the day of the visit." Sephora's Mem. Supp. Mot. Dismiss 8, ECF No. 31-1. In contrast to this declaration, Deneger testified in her deposition that she did not see the glass until she walked into it. Deneger Dep. 29, 68, 89, ECF No. 31-2. She also testified that she was not distracted nor was her view obstructed at the time of the incident. *Id.* at 49, 54, 68. Taking the evidence in the light most favorable to Deneger, the Court finds that there is a genuine issue of material fact regarding her subjective knowledge of the storefront window.

5

Sephora also argues that "[t]he pictures of the storefront show that Sephora's glass storefront is an objectively open and obvious condition." Sephora's Mem. Supp. Mot. Dismiss 9, ECF No. 31-1. In support, Sephora states that "it is self evident that glass storefronts exist at retail stores throughout the United States." *Id*. Sephora also infers from Deneger's "embarrassment and feelings of stupidity" at walking into the storefront window that a reasonable person would not do so. *Id*. Sephora does not otherwise provide case law or additional evidence showing that the storefront window was an objectively open and obvious condition.

The available evidence, however, suggests that the storefront window at issue was not objectively open and obvious. As sworn in Deneger's affidavit, store employees mentioned that mall customers frequently walk into the window. Deneger Aff. 1, ECF No. 36-1. Even if this statement is not true or is not admissible as Sephora claims, Sephora's Mem. Supp. Mot. Dismiss 14–16, ECF No. 31-1, there is additional evidence indicating that the window is not objectively open and obvious: at her deposition, Deneger testified that she walked into the window while looking straight ahead, with an unobstructed view and without being distracted. Deneger Dep. 49, 54, 68, 89, ECF No. 31-2. Given this evidence and Sephora's lack of proof showing that the window is objectively open and obvious, there is a genuine issue of material fact regarding whether the storefront window would be "apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *See Webb*, 413 S.W.3d at 895.

Because Sephora relies on Kentucky's open and obvious doctrine as the basis for its summary judgment motion and because it has not shown that the storefront window at issue is an open and obvious condition, the Court will deny the motion.

V.  Conclusion

The Court will deny Sephora's motion for summary judgment and will refer the matter to the magistrate judge for scheduling. An order will be entered in accordance with this memorandum.

October 31, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**